IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRIAN D. OWENS                                              PLAINTIFF

v.                        Civil No.: 09-5248

CORPORAL T. SCOTT                                          DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Brian D. Owens, an inmate of the North Central Unit of the Arkansas Department of Correction in Calico Rock, Arkansas, filed this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas, referred this case to the undersigned for the purpose of making a report and recommendation.

### I.   Background

As this case is before the Court on Defendant's Motion for Summary Judgment, the Court will recite the facts pled by the non-moving party, the Plaintiff. Plaintiff has brought this action against the Defendant, alleging his trustee status at the Washington County Detention Center was revoked in retaliation for Plaintiff filing this lawsuit.[1]

---

[1] Plaintiff filed his original Complaint alleging Defendant retaliated against him for requesting to use the restroom. (Doc. 1). Plaintiff then supplemented his Complaint, six days later and prior to service, to include his claims of retaliation by Defendant for the filing of this Section 1983 lawsuit. (Doc. 4). In a previous Report and Recommendation (Doc. 9), the undersigned recommended Plaintiff's claims of retaliation regarding the bathroom incident be dismissed for failure to state a constitutional claim, but that his claim of retaliation for filing a Section 1983 lawsuit be allowed to move forward. The Report and Recommendation was adopted *in toto*. (Doc.

On September 25, 2009, Plaintiff signed a trustee agreement whereby he agreed to abide by the trustee rules, which stated that "trustees will stay in their assigned living area during their day off or while not working unless instructed by a deputy." (Doc. 31, ¶3).  Plaintiff initialed that and every other trustee rule in the agreement.  (Id.)

Plaintiff's trustee status was approved the next day, September 26, 2009, by Sgt. Morse and Plaintiff was assigned to B-pod utility with a day off set for every Wednesday.  (Id., ¶4). Plaintiff also signed the assignment to trustee status.  (Id.)  As a trustee, Plaintiff was given the Trustee Rules of Conduct and initialed each rule contained therein.  (Id., ¶5).

The rule regarding a day off stated that unless the trustee was "asleep on [his] day off, [he] will be expected to perform [his] assignment." (Doc. 31, ¶5).  The rule also stated that trustees only were allowed one day off per week and if the trustee worked on a day off he would not be able to "make up" that day. (Id.)  Further, the rule specified a trustee "may have to work part or all of [his] day off during shortages of trustees in order to cover all jobs."  (Id.)

On November 2, 2009, Plaintiff submitted a medical request, stating that he had "pulled a muscle in [his] back and need[ed] a nurse." (Id., ¶6).  On November 3, 2009, Nurse Bradley responded

10).

-2-

to the request stating that Plaintiff had stated to her that he
"pulled [his] back out of spot" when he "picked up a tea jug - day
before yesterday" and that Plaintiff also stated to her he was
"unable to work." (Id.) Plaintiff was prescribed 600 mg of
Ibuprofen, three times a day as necessary, for seven days. (Doc.
31, ¶6).

On November 3, 2009, Nurse Bradley told Plaintiff to go to
work as an "order" from Defendant. (Id., at ¶7). Plaintiff had
submitted a grievance complaining that Nurse Bradley told him he
was to work that day after being hurt or he would be placed on
lockdown. (Id.) Plaintiff stated in the grievance he could barely
stand up and he requested a form to amend his lawsuit. (Id.)
Plaintiff states that Defendant knew of his injured back the day he
reported it to Nurse Bradley, which was November 3, 2009. (Id., at
¶11).

On November 4, 2009, it was reported to Defendant that
Plaintiff was not able to get off his bunk. (Doc. 31, ¶18). On
that same date, Defendant called Corporal Roy and asked for another
trustee on B-pod utility and explained to Corporal Roy what had
been reported to her about Plaintiff allegedly hurting his back.
(Id., ¶16). Defendant states she was told by Corporal Roy that
Plaintiff needed to come down to work as a trustee on duty, but
Plaintiff contends one Corporal would not "tell another Corporal to
tell a 'hurt' inmate to go to work . . .." (Id., ¶17).

At approximately 7:45 A.M. on November 4, 2009, Defendant

-3-

called into U-Block and told Plaintiff that he needed to come down to report for trustee work duty.  (Id., ¶21).  Plaintiff responded by stating it was his day off.  (Id., ¶22).  Defendant contends that she told Plaintiff the fact that it was his scheduled day off was irrelevant, because his help was required as the staff and trustees were really busy.  (Doc. 24).  Plaintiff contends there was enough coverage available at the time, and Defendant "wanted [him] to suffer" because of the injury to his back in retaliation for his lawsuit.  (Doc. 31, ¶23).  Plaintiff also states that November 4, 2009 was the first time he had been asked to work on his day off.  (Id., ¶48).

Defendant then entered U-block and Plaintiff told Defendant she was singling out Plaintiff because Plaintiff had filed a Section 1983 Complaint against her.  (Id., ¶25).  Plaintiff is unaware of when Defendant learned of his lawsuit, although he alleges it was prior to November 4, 2009, but Defendant responded to Plaintiff's allegation he was being singled out by stating that it did not bother her that Plaintiff had named her in a lawsuit. (Id., ¶28).

Plaintiff told Defendant he wanted to speak with a Sergeant. (Id., ¶30).  Defendant responded that Plaintiff would have to submit a request in order to do so.  (Id., ¶31).  At approximately 8:00 A.M. on November 4, 2009, Defendant told Plaintiff over the intercom to pack his stuff and then sent Deputy Loudermilk to escort him to A-Pod in L-Block, which is reserved for "problem"

-4-

inmates.  (Doc. 31, ¶19).  Plaintiff's trustee status was revoked until December 9, 2009, when he was reinstated as a trustee.  (Id., ¶43).

Defendant alleges the decision to take away Plaintiff's trustee status was made because Plaintiff refused to work, which was a violation of the rules and requirements for trustees in Washington County.  (Doc. 27).  Defendant further maintains the decision was in no way influenced by the fact that a lawsuit had been filed against her by Plaintiff.  (Id.)

Plaintiff disagrees with Defendant's characterization of the motivation behind his termination as a trustee.  Plaintiff contends that Defendant knew she had been sued by Plaintiff and tried to force him to work on his scheduled day off.  (Doc. 31, ¶42).  Plaintiff states that he did not violate the rules of conduct for trustees because he was asleep when asked to work on his day off, and there was enough coverage from other trustees, thus under the trustee rules, he should not have been required to work.  (Id.)

On November 4, 2009, there were three trustees working: Doug Crawley, Billy Leihman, and Steven Goodman.  (Id., ¶8).  Additionally, there were twenty trustees, other than Plaintiff, in the barracks.  (Id., ¶17).

## II.    **Applicable Law**

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a

matter of law. See FED. R. CIV. P. 56 (c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. See Adkison v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. Discussion

### A.  Official Capacity Claims

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In Gorman v. Bartch, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the Gorman case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. See Hafer v. Melo, 502 U.S. 21 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Id. at 24-27. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. Id. at 25-27.

-6-

Gorman, 152 F.3d at 914.

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability.  Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989); see also Andrus v. Arkansas, 197 F.3d 953 (8th Cir. 1999)(holding that in actions against officers, specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability).  When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only.  See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); Egerdahl v. Hibbing Community College, 72 F.3d 615, 620 (8th Cir. 1995)("Nix requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient").

A review of the complaint in this case shows that Plaintiff has failed to specifically plead whether the named defendant was being sued in her official or individual capacity. However, this

-7-

Court has an obligation to liberally construe a *pro se* complaint. Haines v. Krener, 404 U.S. 519 (1972); see also White v. Wyrick, 530 F.2d 818, 819 (8th Cir. 1976) (finding pro se petition should be "interpreted liberally and . . . should be construed to encompass any allegation stating federal relief"). In so doing, this Court must keep in mind that the plaintiff is without legal expertise and he prepared his own pleading. Bracken v. Dormire, 247 F.3d 699, 704 (8th Cir. 2001).   The undersigned will therefore construe the complaint as asserting both official and individual capacity claims against the defendant.

Plaintiff's official capacity claims are tantamount to suing Washington County.   Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Because Monell specifically rejected liability based solely on respondeat superior, id. at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity."   White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization.   Id.   Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental

-8-

'custom' even though such a custom has not received formal approval through the body's official decision making channels." Monell, 436 U.S. at 690-91.

Plaintiff in this case has made no allegation that there were unconstitutional policies or practices in Washington County, nor has he provided any evidence of the same. As such, to the extent Plaintiff is alleging official-capacity claims, Defendant's Motion for Summary Judgment (Doc. 25) should be **GRANTED** on those claims.

**B.    Individual Capacity Claims**

Plaintiff has made one individual capacity claim, and that is an allegation of retaliation for filing a Section 1983 lawsuit. In general, conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason. Cody v. Weber, 256 F.3d 764, 771 (8th Cir. 2001); Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990). "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." Id.; see also Dixon v. Brown, 38 F.3d 379, 380 (8th Cir. 1994)("[W]hen retaliatory conduct is involved, there is no independent injury requirement").

Courts understand that "'[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike.'" Teas v. Ferguson, 608 F. Supp.2d 1070, 1085 (W.D. Ark. 2009)(quoting Graham v. Henderson, 89 F.3d 75, 79

(2d Cir. 1996)).   Further, the courts have recognized that prison officials must have broad administrative authority.   Teas, 608 F. Supp.2d at 1085 (quoting Graham, 89 F.3d at 79).   For this reason, it has been said that "courts must approach prisoner claims of retaliation with skepticism and particular care." Teas, 608 F. Supp.2d at 1085 (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001)(holding not every response to a prisoner's exercise of a constitutional right is actionable); see also Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996)(per curiam)(finding speculative and conclusory allegations cannot support a retaliation claim).

To prevail on his retaliation claim, Plaintiff must demonstrate: (1) that he engaged in protected activity; (2) that the defendant took adverse action in response; and (3) that his protected activity was the cause of the retaliation.   See Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994)(threat of retaliation is sufficient injury if made in retaliation for inmate's use of prison grievance procedure).

It is well-settled that the filing of a lawsuit under Section 1983 is a constitutionally protected activity.   Sanders v. St. Louis County, 724 F.2d 665, 666 (8th Cir. 1983) (holding inmate's constitutional right to access courts cannot be impaired, directly or indirectly, in retaliation for filing lawsuits); Goff v. Burton, 7 F.3d 734, 736-37 (8th Cir. 1993) (finding prison officials may not transfer an inmate to another institution in retaliation for inmate's filing of legal actions), cert. denied, 512 U.S. 1209

-10-

(1994).

It is undisputed in this case that Plaintiff's trustee status was revoked and the undersigned finds the revocation of trustee status to be an adverse action.  Madewell, 909 F.2d at 1206. (prison officials may not block reclassification opportunities or worsen plaintiffs' living and working conditions in retaliation for their litigation activities).

A genuine issue of material fact exists as to the last component of this retaliation claim – whether Plaintiff's removal from trustee status was caused by the filing of a lawsuit against Defendant.  Defendant clearly states the decision was based upon Plaintiff breaking the trustee rules by refusing to work on his day off, which he had agreed might be required.  However, Plaintiff counters Defendant's claim by stating the exception allowing for trustees working on their days off – a lack of trustees to complete the jobs – was not present on November 4, 2009, when he was asked to work on his day off.  Moreover, Plaintiff states he was sleeping when he was asked to work, which under the trustee rules meant he would not be asked to work.

Therefore, given these issues of fact, the undersigned recommends that Defendant's Motion for Summary Judgment be **DENIED** as to Plaintiff's claims of retaliation by Defendant in her individual capacity.

**IV.**        <u>**Conclusion**</u>

Accordingly, it is the Report and Recommendation of the undersigned that the Motion for Summary Judgment (Doc.   25) be **GRANTED in part and DENIED in part.**   I recommend the motion be **GRANTED** regarding any official capacity claims made by Plaintiff. I further recommend the motion be **DENIED** regarding Plaintiff's individual capacity claims of retaliation by Defendant.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636 (b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

**DATED** this **11th day of July 2011.**

> /s/ *Erin L.  Setser*
> HON.  ERIN L.  SETSER
> U.S.  MAGISTRATE JUDGE